*Judgment will be entered for the respondent.*

---

FORT WORTH GRAIN AND COTTON EXCHANGE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51538, 64201. Promulgated March 20, 1933.

*Eustis Myres, Esq.,* for the petitioner.
*J. M. Leinenkugel, Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has determined deficiencies for the fiscal years ended at March 31, 1926, 1927, 1928, 1929 and 1930 in the

respective amounts of $110.38, $370.71, $1,329.48, $664.67 and $731.50. The single issue involved is whether the petitioner is exempt from Federal income taxation as a business league or board of trade within the meaning of sections 231 (7) and 103 (7), respectively, of the Revenue Acts of 1926 and 1928. The two proceedings have been consolidated for the purposes of hearing and report. The parties have filed a stipulation, which we adopt as our findings of fact and incorporate herein by reference.

Since the petitioner is seeking the benefits of exemption, it must prove strict compliance with all the statutory conditions authorizing the classification claimed. *Waynesboro Manufacturers Assn.*, 1 B. T. A. 911; *Charles A. Collin*, 1 B. T. A. 305; *Northwestern Jobbers Credit Bureau*, 14 B. T. A. 362; affd., 37 Fed. (2d) 880. "It follows, therefore," as we said in *Northwestern Jobbers Credit Bureau, supra*, "that to prevail here this petitioner must prove that it is not organized for profit, and that no part of its net earnings inures to the benefit of any private shareholder or individual."

Article II of petitioner's constitution and bylaws set out the following as the purposes for which it was organized and is maintained:

### ARTICLE II.

The objects of this Association are: To promote uniformity in the customs and usages of Merchants; to inculcate principles of justice and equity in business; to facilitate the speedy adjustment of business disputes; to insure confidence in the business methods and integrity of the members of this organization; to collect and disseminate valuable commercial and economical information; to prescribe rules for the grading and weighing of Grain, Seeds and Hay, and all products thereof; to adopt rules, regulations and standards of classification, which shall govern all transactions connected with the cotton trade; to organize and maintain a Grain Inspection Department, and a Department for weighing carloads of Grain, Seeds and Hay, and all products thereof, and to promote the general welfare of the Cotton, Grain and Milling interests in Fort Worth.

It will observed that the last sentence of the article of the bylaws above quoted authorizes the petitioner "to organize and maintain a Grain Inspection Department, and a Department for weighing carloads of Grain, Seeds and Hay, and all products thereof, and to promote the general welfare of the Cotton, Grain and Milling interests, in Fort Worth." In conformity with such authority, which is additional to any purpose set out in its charter, the petitioner engaged in the business of inspecting and weighing commodities not only for its members, but for others. The stipulation shows that annual receipts for such services in the years 1926 to 1930, inclusive, were in the respective amounts of $34,619.59, $46,524.48, $60,415.79, $62,875.28 and $67,082.81. Each year there was also sub-

stantial income from rent and life insurance premiums. In 1930 the petitioner established a laboratory department from which in that year it received $16,159.40. These are all activities that are customarily carried on for profit and that as a matter of fact, as disclosed by the stipulation, resulted in substantial profits for the petitioner, since the record discloses that its net worth increased from $55,194.91 in 1926 to $101,631.35 in 1930.

Regardless of what may have been the intention of the organizers of petitioner, the record shows that profits were realized from operations. Counsel argues that this is immaterial, since none of such profits were distributed as dividends or interest to the benefit of any individual member. It is now well established that benefits arising from profits of such an organization may inure to individual members without any distribution of dividends. It is beyond dispute that the petitioner served its members in many ways from which no profits were realized. It is clear that such services were made possible by the large returns from its profit-making activities. In such circumstances it can not be said that none of the profits inure to the benefit of individual members. *Northwestern Jobbers Credit Bureau* v. *Commissioner, supra, Houston Belt & Terminal Ry. Co.* v. *United States*, 250 Fed. 1; *Hutterische Bruder Gemeinde*, 1 B. T. A. 1208.

Petitioner relies on *Crooks* v. *Kansas City Hay Dealer's Assn.*, 37 Fed. (2d) 83, but we think the situation in that case is distinguishable. There the entire income was derived from inspection fees and membership dues. Such fees and dues were usually no more than required for expenses necessary to the purposes of the association and in some years were insufficient to meet operating costs. That concern had neither capital stock nor capital. The petitioner here had no capital stock, but in all the years under review it did own substantial capital assets ranging from $55,194.91 in 1926 to $101,631.35 in 1930, some of which appears to have been invested in income-producing property, since each year's receipts included an item of rent of about $5,000. The Kansas City Hay Dealer's Association confined its activities to the purposes for which it was organized and conducted no operations primarily for profit. The petitioner enlarged its charter purposes in its bylaws and carried on numerous activities which customarily are conducted for profit and from which it realized a substantial income. Obviously it is not a business league in the usual sense, since its services were available to nonmembers as well as members. In our opinion it has failed to overcome the presumption of correctness which attaches to the determination of the respondent.

*Decision will be entered for the respondent.*