**RETAILERS CREDIT ASS'N OF ALAMEDA COUNTY v. COMMISSIONER OF INTERNAL REVENUE.**
No. 8229.

Circuit Court of Appeals, Ninth Circuit.
May 10, 1937.

48

John L. Reith, of Oakland, Cal., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, Howard P. Locke, and Francis I. Howley, Sp. Assts. to the Atty. Gen., for respondent.

Before GARRECHT and HANEY, Circuit Judges, and NETERER, District Judge.

HANEY, Circuit Judge.

By a petition we are asked to review a decision of the Board of Tax Appeals sustaining respondent's determination that petitioner was not exempt from taxation upon its net income for the year 1931.

Petitioner was organized in May, 1917, under title 20, Division 1, part 4 of the Civil Code of California which provided for the organization of co-operative associations to operate on either a profit or non-profit basis. The articles of incorporation state the purposes of the corporation and they are set out in full in 33 B.T.A. 1166, 1167. Summarized, the purposes are: To furnish reports on the credit rating of individuals, firms, and corporations; to act as the agent of members of petitioner in collections; to act as the assignee of claims due such members, and in its own name to sue on, collect, and compromise such claims; to carry on the business of a general mercantile credit agency; to encourage prompt payment of accounts and to promote more efficient credit business; to gather information affecting the credit standing of persons, firms, and corporations and to report it to members; to assist in securing legislation which will encourage better credit conditions, and to aid enforcement thereof; to acquire, own, hold, lease, mortgage, and sell real and personal property desirable or convenient to carry out the purposes of the corporation; and to acquire, own, hold, sell, transfer, and pledge stock or other securities of any other corporation necessary, convenient, or desirable for the furthering of the best interests of the corporation.

Petitioner has no stockholders but is composed of members who pay a fee of $5 each to join. The members are retailers, dentists, doctors, and other professional men.

Petitioner furnishes credit reports on natural persons, only, and to members, only, and makes a charge for such services. The charge may be and has been changed from time to time by petitioner. Petitioner also makes collections for its members, only, receiving for its services a commission.

Non-income producing services rendered by petitioner include: advertising campaigns advocating prompt payment of debts; arranging and executing group settlements; furnishing "reciprocal reports" for members; minimizing competition among retailers; reporting to members information affecting credit, including marriages, divorces, deaths, bankruptcies, and other matters; conducting classes for the education of members' employees on credit practices; and actively supporting or opposing legislation affecting credit matters.

There were no corporations similar to petitioner furnishing all the services petitioner provided, in the locality it served during 1931. However, there were privately owned corporations, organized for profit, furnishing credit reports and collection services for which charges were made, in the same locality, during the same time.

The by-laws of petitioner provide that any profits shall be used to, first, pay the debts of petitioner; second, improve the plant, equipment, and service of petitioner; third, pay dividends in equal amounts to the members.

Petitioner had accumulated profits of $32,587.53 from its operations prior to 1931, which were used to enlarge and expand its business. It was the intention of petitioner to make charges for its services which would return to it only enough profit to care for the expanding needs of the business.

Petitioner reported a net profit in its return for 1931 of $6,878.61. It paid no tax, but claimed exemption pursuant to §

103(7) of the Revenue Act of 1928, 26 U.S.C.A. § 103(7) and note, which provides:

"The following organizations shall be exempt from taxation under this title [chapter]— * * * (7) Business leagues * * * not organized for profit and no part of the net earnings of which, inures to the benefit of any private shareholder or individual."

Respondent determined that petitioner was not exempt, and assessed a deficiency in the sum of $465.43. This determination was sustained by the Board on petition to redetermine the tax.

Article 528 of Regulations 74, promulgated under the Revenue Act in question, is in part. as follows: "A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions or to the promotion of the general objects of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a co-operative basis or produces only sufficient income to be self-sustaining, is not a business league."

Whether or not petitioner is exempt from the taxes imposed is the sole question before us.

■ · It should be noted that a statute creating an exemption must be strictly construed, and any doubt must be resolved in favor of the taxing power. Sun-Herald Corporation v. Duggan (C.C.A.2) 73 F.(2d) 298, 300, and cases cited.

■ The provision of the regulations has been in force since the enactment of the Revenue Act of 1918 (40 Stat. 1057), except for a minor modification therein made September 10, 1927, which was in effect until February 15, 1929. Under such circumstances, re-enactment of the statute carried with it the 'executive interpretation thereof as expressed in the regulations. Sunset Scavenger Co. v. Commissioner (C.C.A.9) 84 F.(2d) 453, 457, and cases cited; Uni-

form Printing & S. Co. v. Commissioner (C.C.A.8) 33 F.(2d) 445, 447.

■ Reading the statute and the provision of the regulations together, we find that, in determining whether an organization is exempt ·from tax, three things are to be considered: (1) The kind or type of organization; (2) the purpose of the organization; and (3) the actual operations of the association.

■■ 1. One kind of organization which is exempt (if other conditions are met) is a business league. "A business league is an association of persons having some common business interest."

There is no special significance to the words "business League." If the persons of an association have some common business interest, then the association is a "business league." The common business interest of the members of petitioner is the betterment of credit conditions. Therefore it is a business league. All business leagues are not exempt, however. Only those having particular purposes, which do not have the prohibited purposes, and which operate in the prescribed way are exempt.

■ 2. Before discussing the purpose of an organization which is exempt we note a provision of the regulations stated "It [a business league] is an organization of the same general class as a chamber of commerce or board of trade." In Produce Exchange Stock Clearing Ass'n v. Helvering (C.C.A.2) 71 F.(2d) 142, 144, it is said: "Under the familiar doctrine of noscitur a sociis, a business league to be exempt must possess the general characteristics of these other organizations with which the statute groups it." The characteristics of a chamber of commerce or board of trade here important are the purposes and operation thereof. The statute and regulations so construed mean, therefore, that the purposes of the league must be "to promote such common interest," must be similar to those "of a chamber of commerce or board of trade," and must not be "to engage in a regular business of a kind ordinarily carried on for profit."

■ An examination of the articles of incorporation discloses that one purpose of petitioner is to promote the common business interest by various means hereinabove related.

Were the purposes similar to those of a chamber of commerce or board of trade?

A chamber of commerce is defined by Webster's New International Dictionary to be "A board or association to promote the commercial interests of a locality, a country, or the like." In 11 C.J. 228, and Bouv.Law Dict.(Rawle's 3rd Rev.), it is defined as "a society of a city, who meet to promote the general trade and commerce of the place." This latter definition is quoted in Crooks v. Kansas City Hay Dealers' Ass'n (C.C.A.8) 37 F.(2d) 83, 85.

A board of trade is defined in Webster's New International Dictionary as "a body of men organized for the advancement and protection of business interests." Although the terms "chamber of commerce" and "board of trade" are nearly synonymous, there is a slight distinction between their meanings. The former relates to all businesses in a particular geographic location, while the latter may relate to only one or more lines of business in a particular geographic location, but need not relate to all. In this connection, see Crooks v. Kansas City Hay Dealers' Ass'n (C.C.A.8), supra, 37 F.(2d) 83, 85.

We believe petitioner has purposes to advance and protect business interests, and therefore such purposes are similar to those of a board of trade.

 Did petitioner propose "to engage in a regular business of a kind ordinarily carried on for profit"? It is clear that a collection business, and possibly a credit reporting business, are regular businesses of a kind ordinarily carried on for profit. One purpose of petitioner was to engage in such businesses, as is shown by the articles. This cannot be denied, for as said in Helvering v. Coleman-Gilbert, Associates, 296 U.S. 369, 374, 56 S.Ct. 285, 287, 80 L.Ed. 278: "The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted." This disposes of petitioner's contention that only its record over a period of fifteen years should be considered.

We must therefore determine whether or not a business league is automatically excluded from claiming an exemption, where one of its purposes is to engage in a regular business of a kind ordinarily carried on for profit, regardless of the number of permitted purposes it may have. In Crooks v. Kansas City Hay Dealers' Ass'n (C.C.A.8), supra, exemption was not denied, where the purpose to engage in a regular business of a kind ordinarily carried on for profit was only incidental to the main and principal purpose.

In Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458, the taxing act exempted a corporation "organized and operated exclusively for religious, charitable, scientific or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual." On page 580 of 263 U.S., 44 S.Ct. 204, 205, 68 L.Ed. 458, it is said: "The defendant concedes that the plaintiff is organized and operated for religious, charitable and educational purposes and that no part of its net income inures to the benefit of any stockholder or individual, but contends that it is not 'operated exclusively' for those purposes, and therefore is not within the exception in the taxing act. Stated in another way, the contention is that the plaintiff is operated also for business and commercial purposes in that it uses its properties to produce income, and trades in wine, chocolate and other articles."

It was held that the transactions in wine, chocolate, and other articles "do not amount to engaging in trade in any proper sense of the term," upon the theory that such trading was purely incidental to the pursuit of the purposes specified in the statute.

 In that case the statute provided that the corporation must operate exclusively for the purposes specified, which meant that it could not engage in business. But, where the business operation was only incidental to the purposes specified in the statute, it was held that such operation did not amount to engaging in trade. We believe that case to be analogous to the instant case. The statute as interpreted by the regulations say that the purpose of the business league must not be "to engage in a regular business of a kind ordinarily carried on for profit." We believe that the proper interpretation of that rule is that, if the purpose to engage in such a business is only incidental or subordinate to the main or principal purposes required by statute, then exemption cannot be denied on the ground that the purpose is to engage in such a business. Northwestern Jobbers' Credit Bureau v. Commissioner (C. C.A.8), 37 F.(2d) 880, and Produce Exchange Stock Clearing Ass'n v. Helvering (C.C.A.2), supra, are not contrary to our holding. In those cases, the purpose to engage in a regular business of a kind ordinarily carried on for profit was not merely

incidental or subordinate to the purposes required by statute.

In determining when a purpose to engage in a regular business of a kind ordinarily carried on for profit is merely incidental or subordinate, each case must stand on its own facts. No rigid rules may be established as a gauge. Although petitioner contends that credit reporting is its only main purpose, we believe that the articles disclose three main or principal purposes of paramount importance: (1) The supplying of information to members to enable them to allow credit so as to avoid loss; (2) furnishing a collection service for its members; and (3) education of prospective purchasers to base their purchases upon ability to pay therefor. If any of these purposes is incidental, it is the latter.

Exemption from petitioner from taxation must be denied on the ground that the purpose to engage in a business of a kind ordinarily carried on for profit is not incidental to a main or principal purpose, but is in fact a principal or main purpose.

3. If an association is a business league, and has proper purposes without prohibited ones, then, if it operates in conformity to the statute and regulations construing it, the association is entitled to exemption. With reference to the operation of the league its activities must "be directed to the improvement of business conditions or to the promotion of the general objects of one or more lines of business as distinguished from the performance of particular services for individual persons," and (under the doctrine of noscitur a sociis as explained above) must be similar to those of a chamber of commerce or board of trade. The business league may engage in a business, on a cooperative basis, or otherwise, so long as "no part of the net earnings * * * inures to the benefit of any private shareholder or individual."

Nothing in the statute or the regulation prohibits the actual engaging in any form of business. The purpose to engage in particular businesses is prohibited, and the disposition of the earnings of the association is dealt with, but no provision is made as to how the earnings may be gained.

All of the conditions regarding the operation are self-explanatory, except as to when net earnings inure to the benefit of private shareholders or individuals. This question is discussed in Uniform Printing & S. Co. v. Commissioner (C.C.A.7) 33 F.

(2d) 445; Crooks v. Kansas City Hay Dealers' Ass'n (C.C.A.8), supra; Northwestern Jobbers' Credit Bureau v. Commissioner (C.C.A.8), supra.

It is unnecessary to apply these rules in the instant case, because we have already held petitioner is not exempt.

Petitioner concludes its brief asking that this court advise it (1) what factors or elements in its corporate structure and operations cause it to be unable to receive the benefit of the exemption, and (2) if the removal thereof would entitle it to exemption. This court has jurisdiction only to review decisions of the Board, 26 U.S.C.A. § 641. The Board has not decided the questions thus submitted, and therefore we must decline to enter such advisory field.

Affirmed.