THE AMERICAN AUTOMOBILE ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15912. Promulgated March 26, 1953.

*Charles C. Collins, Esq.*, and *Joseph K. Moyer, Esq.*, for the petitioner.

*James C. Maddox, Esq.*, for the respondent.

1154

1156

**OPINION.**

HARRON, *Judge:* The petitioner seeks exemption from income tax on the ground that it is a business league within the purview of section 101 (7) of the Internal Revenue Code. The petitioner makes no claim to exemption as a club under section 101 (9) of the Internal Revenue Code. [4] Section 101 (7) provides that "Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the

[4] This Court has held that automobile clubs are engaged in a business ordinarily conducted for profit and are not entitled to tax exempt status under section 101 (9) of the Code. *Chattanooga Automobile Club,* 12 T. C. 967, affd. 182 F. 2d 551; *Keystone Automobile Club,* 12 T. C. 1038, affd. 181 F. 2d 402; *Automobile Club of St. Paul,* 12 T. C. 1152.

benefit of any private shareholder or individual" shall be exempt from taxation. The term "business league" is not defined by the statute. The statutory concept of the term is, however, found in the Commissioner's regulations, Regulations 111, section 29.101 (7)–1, which have continued unchanged through successive reenactments of the statute. The regulations are printed in the margin.[5]

The requirements of the statute and the regulations which an organization must meet in order to qualify as an exempt business league may be summarized as follows: (1) It must be an association of persons having a common business interest. (2) Its purpose must be to promote that common business interest. (3) Its activities should be directed toward the improvement of business conditions in one or more lines of business as distinguished from the performance of particular services for individual persons. (4) It should not be engaged in a regular business of a kind ordinarily conducted for profit. (5) It must not be organized for profit. (6) Its net earnings, if any, must not inure to the benefit of any private shareholder or individual. See *Associated Industries of Cleveland*, 7 T. C. 1449, 1465.

The petitioner contends that it satisfies all of the aforementioned requirements. The respondent argues that petitioner fails to meet any of the tests set out in the statute and regulations. We agree with the respondent.

As observed by this Court in *Associated Industries of Cleveland*, *supra*, p. 1464:

A statute creating an exemption must be strictly construed and any doubt must be resolved in favor of the taxing power. Accordingly, if petitioner is to avoid taxation because it is a "business league," as it contends, it must meet the tests laid down by the statute and the Commissioner's regulations which have persisted through the successive reenactments of the statute. In this connection it must be remembered that the recurrent enactment of the statute carried with it the executive interpretation thereof as expressed in the regulations. *Retailers Credit Assn.* v. *Commissioner*, 90 Fed. (2d) 47, and *Underwriters' Laboratories* v. *Commissioner*, 135 Fed. (2d) 371.

---

[5] REGULATIONS 111.

SEC. 29.101 (7)–1. BUSINESS LEAGUES, CHAMBERS OF COMMERCE, REAL ESTATE BOARDS, AND BOARDS OF TRADE.—A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. A stock exchange is not a business league, a chamber of commerce, or a board of trade within the meaning of the Internal Revenue Code and is not exempt from tax.

The petitioner, during the taxable years, was not an association of natural or legal persons having a common business interest. Membership in the petitioner, under its bylaws, was available to individual motorists without regard to business interests or activities. Individual motorists, automobile clubs and associations, and commercial vehicle organizations were all eligible for membership in, and were in fact members of the petitioner during the taxable years. Individual motorists could acquire membership by becoming an associate member, or by joining one of the divisions operated by the petitioner, or by joining one of the state associations or automobile clubs affiliated with the petitioner. The petitioner's bylaws, Article 3, section 1 (a), specifically provided that individual members of affiliated clubs were members of the petitioner. But the petitioner argues that the members of affiliated clubs were members of the petitioner for a limited purpose only, i. e., to guarantee to the individual member reciprocal service on a nation-wide basis. We note that the petitioner's bylaws contained no such restriction. The petitioner concedes that the members of its divisions had no common business interest but contends it was necessary for the petitioner to operate the divisions in order to promote the interest of its automobile club members by providing a nation-wide reciprocal service. The fact that it may have been necessary for the petitioner to operate the divisions does not aid the petitioner in meeting the requirement of the regulations that membership must be restricted to persons with a common business interest. It necessarily follows that the petitioner could not have as its purpose the furtherance of the common business interest of all its members. Petitioner therefore fails to meet requirements (1) and (2) above.

The petitioner, also, fails to meet requirement (3) above. Although the petitioner engaged in some activities of a civic nature, notably, in the field of traffic and highway safety, its main activities were not directed toward the improvement of business conditions, generally, in one or more lines of business as contemplated by the regulations. Rather, the evidence establishes, and we have found as a fact, that the petitioner was primarily a service organization. Its principal activities, as disclosed by our findings of fact, consisted of performing particular services, and securing benefits of a commercial nature for its members, both individual members and its state association and automobile club members.

The petitioner contends that its purpose was to serve and promote the common business interests of its state association and automobile club members. It argues that, with the exception of associate and division members, it did not perform any direct personal services for

"individual persons" as prohibited by the regulations. Further, that the total number of associate and division members was insignificant, constituting less than 4 per cent of all individuals holding membership in the petitioner and its affiliated clubs. The petitioner apparently assumes that the performance of particular services for individuals is prohibited by the regulations, while the performance of services for legal entities is not. The words "persons" or "individual persons" as used in the regulations include individuals, unincorporated associations, and corporations. *Automotive Electric Association*, 8 T. C. 894, affd. 168 F. 2d 366; *Northwestern Municipal Assn. Inc.* v. *United States*, 99 F. 2d 460; *Apartment Operators Association*, 46 B. T. A. 229, affd. 136 F. 2d 435; *Underwriters Laboratories, Inc.*, 46 B. T. A. 464, affd. 135 F. 2d 371, certiorari denied 320 U. S. 756.

Furthermore, the petitioner's principal activities during the taxable years constituted engaging in a regular business of a kind ordinarily conducted for profit. It therefore fails to satisfy requirement (4) above. The petitioner was engaged in business in operating the divisions which provided for members the same, if not additional, motoring and touring services as did other automobile clubs. The divisions were in competition with automobile clubs not affiliated with the petitioner. This Court has determined that automobile clubs are engaged in a regular business.[6] The petitioner concedes that in operating its divisions it was engaged in business. But it urges that any business activity it may have engaged in was only incidental to its main purpose and not preclusive of exemption within the rule established by the Supreme Court in *Trinidad* v. *Sagrada Orden De Predicadores*, 263 U. S. 578. It relies particularly on *Commissioner* v. *Chicago Graphic Arts Federation, Inc.*, 128 F. 2d 424.

The facts in the instant case do not support the petitioner's argument. The operation of the divisions was a major activity. Dues from division members constituted the petitioner's largest single source of income, accounting for approximately 40 per cent of the petitioner's gross revenue during the taxable years. The petitioner's position with respect to its divisions is inconsistent. It argues, on the one hand, that the operation of divisions was necessary and essential to its main purpose, i. e., the promotion of the business interests of its affiliated clubs. On the other hand, it urges that their operation was only incidental to petitioner's main purpose.

The petitioner was also engaged in competitive commercial activity in the solicitation and sale of advertising and official appointments from which it received substantial income, in the sale of travel publications and other materials and supplies to affiliated clubs, and in the operation of its foreign travel and contest board departments to mention the more important activities.

---

[6] See footnote 4 above.

During the taxable years, the petitioner received over 30 per cent of its revenue from advertising and the sale of publications, and supplies. The foreign travel and contest board departments produced no income during the taxable years due to the impact of the war on their operations. However, the record shows that in normal years the foreign travel and contest board departments were a source of substantial revenue to petitioner.

The petitioner was also the beneficial owner and operator of Service Agency, Inc., which was engaged in the business of selling automobile insurance on a commission basis to the members of petitioner's divisions. The record does not show the earnings or financial condition of Service Agency, Inc., but it does disclose that approximately 50 per cent of the division members purchased insurance through the agency, at a saving to the members.

The petitioner engaged in other business activities of lesser importance such as operating a driver training school for members in the District of Columbia in competition with others similarly employed.

The petitioner's net income for the years 1943, 1944, and 1945, respectively, was $115,138, $126,640, and $33,762. During the same years it paid salaries of $370,881, $421,504, and $498,357, and sales commissions and expenses of $103,262, $118,048, and $134,628. It accumulated over a period of 10 years a surplus of almost $1,000,000. The fact that a surplus was accumulated, as petitioner contends, for the acquisition of a home building for the organization does not detract from the true character of the petitioner's activities. The evidence and record before us clearly establish that the petitioner's purpose to engage in business was not merely incidental and subordinate to a main purpose but was in fact a principal purpose. It defeats the statutory exemption. *Retailers Credit Association of Alameda County*, 33 B. T. A. 1166, affd. 90 F. 2d 47.

Finally, the petitioner fails to meet requirement (6) above, in that its net earnings inure to the benefit of private individuals. The following comment of the Court in *Durham Merchants Ass'n.* v. *United States*, 34 F. Supp. 71, 73, is particularly pertinent here:

It cannot be successfully maintained that this is a company whose net earnings do not inure to the benefit of private individuals because it has no capital stock and stockholders. Undoubtedly the growth and success of the enterprise render its usefulness greater to each of its membership. If its profits are used to expand and enlarge its activities, its members profit thereby. And this increased service and activity inures to the profit of its members.

See *Underwriters Laboratories, Inc., supra*, p. 475.

The words "private individuals" used in the statute are broad enough to include corporated and unincorporated associations as well as natural persons. *Louisville Credit Men's Adjustment Bureau* v. *United States*, 6 F. Supp. 196; *Underwriters Laboratories, Inc., supra*,

p. 476. In the instant case net earnings inured to the benefit of members in various ways. Member clubs, for example, were able to purchase touring and travel publications from the petitioner at less than the actual cost due to the fact that revenue received by the petitioner from advertising and official appointments served to offset a part of the cost of their preparation and publication. Individual members profited by receiving from petitioner motor club and other services for less than the cost of the services elsewhere.

The petitioner concedes that its members benefited by such success as petitioner attained in the conduct of its activities, but contends that the benefit accrued to the entire community of members and should not be "translated into the inuring of net earnings to a private shareholder or individual." The argument is without merit and is disposed of by the authorities cited *supra.*

We have considered the cases relied on by the petitioner and are of the opinion that they are distinguishable on the facts from the instant proceeding. As the respondent contends, the petitioner's main purpose and activities cannot be characterized as fostering the improvement of business conditions and practices generally in an industry, as in *American Fishermen's Tuna Boat Assn.* v. *Rogan,* 51 F. Supp. 933; *Commissioner* v. *Chicago Graphic Arts Federation Inc., supra;* and *National Leather & Shoe Finders Association,* 9 T. C. 121. Nor was the petitioner an organization engaged in promoting the commercial, industrial, and civic welfare of a community, *Milwaukee Assn. of Commerce* v. *United States,* 72 F. Supp. 310, nor in establishing and maintaining the integrity of a local commercial market, *Crooks* v. *Kansas City Hay Dealers' Assn.,* 37 F. 2d 83, nor in seeking to establish and maintain "the open shop" principle in the industrial life of a community, *Associated Industries of Cleveland, supra.*

We hold that the petitioner is not an exempt business league within the intent and scope of section 101 (7) of the Internal Revenue Code.

Reviewed by the Court.

*Decision will be entered for respondent.*

OPPER, *J.,* did not participate in the consideration of or decision in this report.